The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, everyone, and welcome to the Ninth Circuit. Before we begin this morning, Judge Sung and I would like to thank our colleague, Judge Boggs, from the Sixth Circuit, who is sitting with us by designation this week. We very much appreciate his help. And I would like to acknowledge that this is the first day on the bench for our colleague, Judge Sung. You will not be able to tell that from the brilliance of her questions, so I wanted you to know that in advance. We are going to hear the cases today in the order that they're on the calendar. The first case, well, there are three cases consolidated for argument, United States v. Merrill, United States v. Berry, and United States v. Barbee. We've allocated 10 minutes aside to the, in each case, and 30 minutes to the government. I noticed this morning that at least one of counsel in these cases doesn't plan to argue. And to the remaining two appellants, you can split the time however you wish, as long as you don't exceed your 30 minutes and you can save some time for rebuttal collectively, if you would like. And so I'd encourage you to think about between, I can tell you thought in advance amongst each other how to present the case. With that, let's, I guess we'll lead off with, if I'm not mistaken, with Mr. Ayers. May it please the Court, Your Honor. I'm Zachary Ayers on behalf of Robert Sherman Berry. With me today is Mr. Mark Vovos, who represents Mr. Charles Barbee, and Mr. Jeffrey Neeson, who represents Mr. Merrill. All three of these defendants are, have pretty much very similar issues. It's the First Step Act issue that I'll be arguing, and Mr. Vovos will be arguing the jury instruction issue and how it applies to authorization of a sentence on the 30-year mandatory minimum. With regard to the First Step Act, I kind of want to give the Court a bit of a timeline to work with for all three of these appellants. Well, I think we, I don't think you need to use a bunch of time on that, because I think we understand that as to each one, the acts that were the subject of the charges occurred before the First Act Act was adopted. Correct, Your Honor. Each of these defendants were first sentenced before the Act was adopted. That's correct. Their sentences were vacated, and they were sent back for resentencing, and resentencing occurred afterwards. Correct. That is correct. That's the timeline I'm speaking of, Your Honor. And the statute, so going to the statute then, the statute itself is Section 403 of the First Step Act, and we're specifically looking at the applicability of it. The section reads, this section and the amendments made by this section shall apply to any offense that was committed before the date of enactment of this act, comma, if a sentence for the offense has not been imposed as of such date of the enactment. And our job today is to try to figure out what that last clause means, right? Yeah, with a sentence and how it affects these individuals. The best case to look at is the Uriarte case because it has the exact same timeline and the exact same understanding, and it's a broad, it sees the statute itself as inclusive. Same for when the Malpatuli case that was not decided because Mr. Malpatuli had received compassionate release, was ordered compassionate release in 2021, so this court couldn't decide the same issue for Section 401C, which has the exact same language in the statute. Mr. Malpatuli, though, I would like to iterate that there was an amicus brief in there by Senators Booker, Grassley, and Durbin that explained how inclusive this particular statute is. And they were specifically referring to 401C, but they had a footnote in there that describes this same applicability essentially could be tacked on to 403B because of the exact same language. I think the problem in this case, I think, in interpreting this language comes from the use of the word A. Yes. And some courts have said that means, A means any. And other courts have said no, A means the operative sentence that was imposed. If we're just dealing with grammar for a moment, what's your best argument? With A, I believe it means it's inclusive of these types of sentences because these individuals are similarly situated to someone, a new defendant, who is sentenced after the enactment of the First Step Act, whether they were. Theoretically, at least what I'm hearing you say, you want not for A sentence to be inclusive. You want A sentence to be limited to the final sentence that is part of this appeal because if A sentence is broad, then A sentence has been imposed in this case, right? It was imposed in the original sentencing. What I'm getting at is it's inclusive of this type of sentence that these individuals received because they're similarly situated as if they had not been sentenced. But what you're saying, what is inclusive is the application of the act, not the word sentence, not the word A. Yes, the act itself is to be inclusive. So your argument is more of a policy one, not a textual one. Yes, and that's what the senators were getting to in their amicus in Mount Batuli, is to include defendants. Their amicus about 401C. Yes, which can be directly applicable to 403B. If the statute said, because I think you've got your finger on the central issue in front of us, if the statute said any sentence, would your argument be different? If it said any sentence, it would be, I think it would be... Harder. It would be a harder pinpoint. And if the statute said the sentence, your argument would be easier. Yes, it would be. And so where does A leave us? That's what I'm asking. You know, Judge Boggs asked it slightly differently. He said if you take the word A literally, A sentence was imposed, it was later vacated, and the case was sent back for resentencing, and another sentence was imposed. So, you know, I understand your policy argument makes a lot of sense to me. I'm just trying to figure out whether the statute on its face is ambiguous so we can resort to secondary tools. It's not that ambiguous. But even if you had to resort to secondary tools, like the rule of lenity, or then... Let me be clear. I think once we resort to secondary tools, your argument is quite good. Yes. Okay. I mean, it seems to me the clear purpose of this provision was to say we're not going to reopen old sentences. That's what Congress was thinking about. The question is what did Congress actually say as opposed to what it was thinking about. Congress was saying that basically what they're saying is it includes everyone after the passage of the First Step Act. That means even somebody who's had a successful 2255 and is on an appeal of a resentence. No, that's your position that they're saying it. Tell me why we should read the language as saying it. The plain language of the statute should be read to include individuals like Mr. Berry, Mr. Merrill. It's not the plain language. If it were the plain language, we wouldn't be agitating here, would we? Well, I mean, I think Judge Hurwitz has laid out, you know, what does pain mean. You see, I think your argument has to be the statute isn't all that plain. The statute uses a term that may be susceptible to interpretation, the previous sentence or the post-sentence. And once we look at the purpose of the statute, it's quite ‑‑ I don't want to make your argument for you, but it's quite clear what Congress meant. Right. I've always resisted the argument that the plain language of the statute leads us to a result because if it did, we wouldn't be here. Well, the issue we have here is that you have a brand-new plenary resentencing by 2019, which is after the statute. It's wiped clean, as you see in Pepperin and Pete. That means the ‑‑ Is it right? There was so much of the sentence that wasn't affected. That wasn't affected, you said? Yeah, wasn't there ‑‑ No, it was actually, if we go back and look at the docket. They did resentence, but the discussion was all about certain portions of it. Most of it was reimposed exactly the same and not even agitated with the way I looked at the ‑‑ Oh, no. Oh, no, Your Honor, I would disagree with that respectfully because if you look back at the docket sheet, you have a sentence of, say, 232 months on specific counts and 10 years and 20 years that were reduced down to 60 months. Some were, but many were not. But even then, the court had to reorder a new presentence investigation report, which in my view ‑‑ And under our case law, it's clear that unless we limit the district court when we send it back, a resentencing is based on an open record. We've said that any number of times. Yes, and with that factually speaking, though, the court ordered a new presentence investigation report, which indicates that there is a brand new sentence, plenary resentencing here, and the judge had to really start from scratch at this point to come to the resentencing judgment. But your argument in some sense is that our prior orders in this case, in effect, deleted the last sentence. Which particular ‑‑ A sentence may have been imposed, but we said no, no, it hasn't been. Go back and impose a new one. I mean, that's really your argument in this case, isn't it? Yes, because the original sentence, the 1997 sentence, was vacated, nullified, you know, it's gone, it's void. So even though historically it existed, for the legally relevant effect, it does not exist anymore. And that argument would apply to every type of resentencing. As you said, you may get a 2255, 10, 15 years down the road, and then you would get the benefit of the First Step Act. That's your argument, isn't it? This case is not different or distinguishable from any other case where there is some type of resentencing. So the Uriarty case would be the one that it's most like, and somewhat Henry as well. The case it is not like, and I know the government cites it in its brief as Kelly, because Kelly was before the First Step Act, and then he had a sentence in 2017, went on direct appeal, tried to get the retroactivity. And we've already held that the fact that you're on direct appeal doesn't mean you get the benefit of the First Step Act, because, in effect, what the Act tells us is not to upset sentences that were already imposed before the appeal, simply because of the Act. Right. That was a different scenario, because there wasn't a 2255 that was caused by the Johnson case, like there wasn't this one. And then everything... But respond to Judge Boggs' concern or question. It does seem to me the premise of your argument, the natural logic of your argument, is that if somebody brings a 2255 and their sentence is vacated, and they otherwise fit within the category that the First Step Act would apply at a resentencing, wouldn't it? It would. It would apply. That's without respect to what the reason for the vacation was, whether it was a portion of many crimes. Are you arguing that there needs to be what you call here a plenary resentencing and a new pre-sentencing report? Because very often you vacate a sentence. It may be very clear that the first sentence was 15 years, and whatever the judge did wrong on remand, he's got to impose 10 years. But you wouldn't distinguish that, would you? No, I wouldn't distinguish that, because they're in the same situation. Let me push this a little farther. By the way, I don't know that it's an argument you have to make in this case, but I'm interested in the... But we often get sentences that come up where somebody's imposed a condition of supervised release that's inappropriate, and we send the case back to... Rather than impose a different condition, we send it back to the district court, and we say resentence and impose an appropriate condition of supervised release. Under your reasoning, would the First Step Act apply to those cases? To reimpose supervised release? Yeah, no, it's a resentencing. We're sending it back to change the sentence to impose a different... Or does it only apply in your view whether... Less restitution? Yeah, or restitution. Yeah. Or does it only apply in your view whether... If it's less, of course, with one of our clients. I mean, I knew you'd like that. I guess my question is the logic of your argument suggests that whenever something goes back to the district court for resentencing, even if only on a technical issue, you should vacate the sentence on count two because it's the same crime as count one and you shouldn't impose two sentences. Does it apply every time we send it back or only when, as in this case, it was sent back on an open record for resentencing? I think the court could go even a little bit further than just an open court record. I mean, just for pure fairness to future litigants, future appellants, I think it could. You were splitting time with your colleague. Yes. I wanted to make sure you got some time. I've forgotten to mention, Your Honor, I'm going to do five minutes for rebuttal. You're going to have a hard time having five minutes left. Oh, the clock should be set at 30. So you do have some time left for rebuttal. Yes. So I'm about up. You're gaining time. We never see this happen. Turn backwards. Turn backwards in timing. Now I'm just totally lost because I thought I had like two and a half minutes before Mr. Bobo speaks. You still do. Okay. So if there's any further questions of the court, basically our argument is that the First Step Act should apply to these three defendants because they are in the same situated position as a new defendant who is getting sentenced post First Step Act. Thank you, Your Honors. Thank you. Mr. Robles? Yes. Good morning, Your Honor. My name is Mark Bovis. I'm the attorney for Charles Barbee in this case. I want to make a few basic points. We're appealing the sentence that Mr. Barbee was given by the district court imposing a 25-year mandatory minimum. And I take it you're addressing the issue of whether or not under Apprendi and its sequels, something on cases I'm pretty familiar with, the jury actually made the requisite finding about the explosive device, correct? No. No? No. What issue are you addressing there? What did I argue? Yeah. Well, the jury made no finding. No, I'm saying that's the issue you're addressing. Oh, yes. I'm sorry, Your Honor. I misunderstood. I'm sorry. So here's the – let's cut right to the chase. Yes. The judge reads the charge to the jury, and one of the counts says, Parin, an explosive device, and he says so. Another count, which is not directed at an explosive device, doesn't say that. It just says firearm. The judge, the jury, finds these defendants guilty on both sets of counts. Why isn't that an express finding that on those counts the defendants possessed the requisite explosive device? Because the instructions pertaining to finding a weapon specifically didn't call for that. The verdict form, when you look at what the end result is, talked about a firearm and then, in parentheses, a pipe bomb. But the answer to your question, the instructions are muddied. You can look at instruction 10. Well, I did look. No, we've all read the instructions. The judge reads the charges. Yes. He says, here are the charges, and then says, in order to convict, and then doesn't mention again you must find an explosive device, but he's already defined with respect to those charges that the word firearms means explosive device. Yes. I think that's confusing, and I think that's muddying, and I think the jury was confused because they didn't make any specific finding as to the type of weapon. Well, the jury wasn't asked to make any specific findings. I think that they, well, they should have been. Well, let's break that down into parts. I think our cases are pretty clear that it's not required to ask for special verdicts in cases like this. Do you agree? Not necessarily, Judge. But what case says that the trial judge, sua sponte, never asked by the defense, must ask for special verdicts? Right before Mr. Barbary was sentenced in 1997, I think the Ninth Circuit in Perez and in Alerta made a specific finding that if there was to be an enhancement, something that was important as going from a five-year firearm to a 25-year pipe bomb, when the jury didn't make a specific finding, there should be a special interrogation. Right, right. The jury's not asked to make a finding. They didn't. Then you should ask for it. But here, the question is whether or not you must ask for that specific finding or whether the general instructions in this case cover the crime. No. Judge, in all respect, I don't believe that. I think the jury was confused, and I think you do have to ask. We have no idea whether the jury was confused or not confused, do we? But they could have been. Well, you can speculate with the instructions, Your Honor, that six of them could have thought it was a pipe bomb and six of them could have thought it was a firearm. Well, so let me take you back to ‑‑ and, unfortunately, this is an area of my career where I've been unsuccessful. I've tried to persuade courts that there can be no harmless apprende error, and I've always failed, including in front of this court. And so, assuming there's error for a moment, how could the conviction of those counts have been anything but for possession of an explosive device? Because, number one, factually, he was never in a possession of a pipe bomb, and all the facts show that. But you're not making it a sufficiency of the evidence. No, no, no, I'm not. But I'm just saying when you talk about what the other side says factually, that's just not the case. The point is that I think the instructions from Alerta and Perez are when you have a substantive charge, a 924 charge that stands by itself, and one of the elements is you have to find out if there's a question about what type of weapon was used, especially because of the enhancement, something that's important and is detrimental and punishes somebody from a five‑year to a 25‑year sentence. That's the best answer I can give you. And the jury never made any finding. The court was the one, as you talked about with the Prendi and the Lean, the court was the one with the vague jury verdict of firearm, pipe bomb. The court made the decision, I'm not going to sentence you to five years in a firearm. I'm going to sentence you to 25 years in a pipe bomb. And the jury made no finding of that. Let me ask the question differently. You agree that if the jury finding implicitly found that these ‑‑ that your client, let's not take all three, possessed a pipe bomb in order to be convicted of that specific charge, then you didn't need to have a separate verdict that found it. Well, Judge, I ‑‑ Let me reconstruct the instructions for you for a second. Let's say the instructions, the part that you say are murky, said to the jury, you must find, in order to convict the defendants of count X, that they possessed a pipe bomb. And there was no special verdict. The jury just returned a general verdict of guilt. But you wouldn't have an Apprendi argument, would you? Well, I'm trying to get my arms around it. I don't want to go down that slippery slope because I don't think that happened. You've got to try to answer my question. We're on the slope together here. Okay. We'll go down together. Let's assume the instruction to the jury said, on count X, in order to find the defendants guilty, you must find beyond a reasonable doubt that they willfully used and carried a firearm as instructed, that is to say a pipe bomb. If the jury had found that that had been the instruction and the jury had returned a general verdict of guilt, you would not have an argument today, would you? I don't believe that, Judge. No, I think that would be it. You'd have an argument no matter what they did, right? No, I don't, Judge. I have an argument with the facts in this case. When you have a verdict line. I understand. I'm trying to get back to the facts in this case. So your objection is that when the judge instructed later on, he didn't repeat the words pipe bomb, correct? Well, I think you have to take the instructions as a whole. And when you use terms like destructive device, firearm, pipe bomb interchangeably in different instructions and different charges and the facts of the case, I'm saying altogether in total. It was confusing. And there should have been a specific finding is something as serious as an enhancement of 25 years as opposed to five. That's what I'm trying to say. What I'm trying to ask you is whether or not you can envision a case in which there's not a special verdict, but which the jury is instructed so specifically that we know the jury must have found that there was a pipe bomb. If the jury said you may only return a verdict of guilt on count X if you found that Mr. Barbie possessed a pipe bomb, but there's no special verdict, that would be sufficient, would it not? Well, Judge, arguendo it may be, but not in this case. I don't think it would be. Okay. I'm trying to figure out whether that effect occurred in this case. I don't think so. Your confusion argument, the various times where it says firearm, paren, pipe bomb, is the problem with the parenthesis? If it said use of a firearm, comma, to wit a pipe bomb, would that have solved all the problems? Perhaps, but that didn't happen. But then we get back to whether that really is an item of confusion. Again, we're talking grammar and what the way things are used in English. Am I right? The judge, the verdict form says paren, pipe bomb. Yes. The charge says pipe bomb and instruction 10 says pipe bomb. The part you point to, is it what, basically instruction 13? Yes. And even instruction 13 defines a firearm to include a destructive device, which includes any bomb. Judge, that argument in all respect, it seems if that's the case, if they're talking about a destructive device and they're saying to this court that a firearm is a destructive device, then you might as well forget about the 924 portion that says a firearm gets five years. Because if you have a firearm, it's a destructive device, you should get 25 years. It includes a destructive device. If it's just a plain old Glock, then there's nobody that's going to say it is a pipe bomb. Well, this is a plain shotgun. It's not a pipe bomb. They have pictures of them and everything else. Mr. Barbie doesn't contest his conviction or guilt, but am I? No, I think we understand your argument. Let me rephrase it so I'm sure. I think your argument is that absent a specific verdict with respect to whether or not your client possessed a destructive device, that we must assume that the jury did not make that finding. To be sure, so there could be a proper enhancement under 924 when there's any question, to avoid any doubt and not have the court, as a sentencing matter, make the decision for the jury when they made no specific finding. That's my argument. Thank you. Thank you very much, Your Honors. You can save the rest of the time for rebuttal. Let's hear from the government. Good morning, Your Honors. May it please the Court, my name is Joseph Harrington. I'm an assistant United States attorney for the Eastern District of Washington in Spokane. And I was the trial attorney back in 1997 in this case. Never suspecting that the First Step Act would be passed after the trial. Your Honors, I'd like to address some of the issues that have been raised. I'll address first the First Step Act and its application and whether Judge Nielsen, the district court judge, erred by failing to apply the First Step Act in this case. Well, let's take it out of the realm of Judge Nielsen because it's an issue of law. It is, Your Honor. Courts around the country have gone different ways on it. So one could be hardly critical of a district judge coming out either way on this case. Tell us why a sentence that has been vacated and sent back for resentencing under our case law, presumably on an open record, is a sentence for purposes of this statute that was imposed prior to the act. Your Honor, I think the first starting point is as a case from this circuit, Boyas v. ORIS, it's at 964 F 3rd, H64, 2020. In that case, this court was addressing the language and the text of Section 403B of the First Step Act. And I would hasten to note that, and it's important to note that in that case, at footnote 12, this court specifically said- Preserve this issue. I want to make sure that that's clear. Any case that says we're not deciding the issue isn't great precedent for how we should decide the issue, is it? Well, it can be, I think, in this case because as this court analyzed the statutory language, it looked first to the text. And in this case, this court said that they rejected the defendant's argument because it was plain, unambiguous language of Section 403. But we were dealing there with a direct appeal. Yes? That was a direct appeal. And the court said, quite reasonably, the sentence that's before us is a sentence that was imposed before the First Step Act, and therefore the act doesn't apply to it. And that makes perfect sense. I don't see how one could read the statute any differently. But then the court said, now we're not going to decide what happens if a sentence gets overturned and sent back for a new sentence. So I just don't know how Boris helps us at all. Respectfully, Your Honor, I would suggest that whether it was a direct appeal or not, this court was looking at the statutory text, the language. The interpretation of the language shouldn't really matter whether a case is on direct appeal or maybe a... But on direct appeal, a sentence is still valid as a legal matter, is it not? Yes. When a sentence has been vacated, what is the effect of vacator? You know, and in this case, the convictions were vacated, and they came back for resentencing as the court unbundled the package. And respectfully, I'm not going to try to replow a little ground here. The court doesn't believe that Borges addresses this issue, but the text... Well, I mean, I'd just say I have a hard time believing that a case that dropped a footnote that said, we're not deciding the issue that today's in front of us, decides the issue that today's in front of us. Oh, I'm... Yes. And as Judge Sunk points out, it's plain that there's no other sentence to be talked about there except the one that was imposed before the act took place. And here we have another sentence. Now, the question is, what do we do with that other sentence? And I'm not sure Boris walks us there. If your argument is that A means any, as we were talking about before, a grammatical argument, I understand that, but I don't think that Boris gets us there. All right, Your Honor. So that would be the argument, that A does not mean any and it does not mean the. It just means a sentence imposed. And I would suggest that the difference between Section 403B and Section 403A is that 403A uses the word final sentence. In other words, 403A, with respect to 924C cases that can be subsequently stacked, talks about final 924C. Well, why shouldn't we read A and B in conjunction? In other words, did Congress really have to use the words final twice? When I look at the two of them together, I don't think Congress was trying to distinguish between the two circumstances. It just didn't use the word final the second time, did it? Well, the observation could be, Your Honor, that if the Congress did use the word final, and that's what they meant with respect to subsection 403B, meaning a final sentence being imposed, the Congress would have used that term. But here Congress used the word a sentence, which I would respectfully submit that the interpretation of A is just that, a sentence, rather than any sentence or the sentence or the final sentence. But based on that argument, then we could be imposing penalties based on something that was legally voided. Is there any other context that you know of in which a court, the government, can impose punishment based on a conviction, a sentence, an act that has been legally voided? Legally voided, I have to think about that, but we do have the savings statute, which is at 1 U.S.C. section 190, and it's been interpreted by Dorsey v. United States, the Supreme Court, 2012, that sets a default rule that penalties that are in place, that are subsequently changed, remain in place unless Congress clearly indicates to the contrary. So that, I think, in this case would support the argument that A means A. But see, if Congress wanted that rule to apply, it wouldn't have done anything in B, right? Because Congress is supposed to know our default rules. It plainly meant to change the law in some respect, did it not? It did, yes, Your Honor. Okay, so we know that, for example, if you committed the crime before the date of the First Step Act, but you were sentenced thereafter, the default rule no longer applies because Congress has told us in B that it wants a different rule. Correct. Okay, so the question isn't what the default rule says. The question is how much did Congress amend it by enacting B? Yes, Your Honor, and there has to be a marker. I mean, there has to be something in place to decide where the cases are going to fall. So why isn't the relevant marker the one that your friend suggests, which is, look, we don't mean to upset settled sentences. We're not going to go and reopen old cases. But any sentence that gets imposed after the date of this act is going to be imposed under the act. That's what the senators say they meant. I'm not sure how much weight to give to an amicus brief, but it strikes me as making perfect sense in terms of trying to think of what Congress was trying to do here. And so why shouldn't we read the act that way? Well, you know, this is open for interpretation. I get it. But A means A. And that's the statutory text in this case. And these defendants received sentences for very, very serious crimes. And that's why the judge could give them consecutive sentences again. He could have given them consecutive sentences again. He just wasn't mandated to, right? Well, in this case, you know, these defendants were convicted of. No, I know they did bad things. I'm just saying the previous act required stacked sentences. There's nothing that prevents a judge from giving consecutive sentences under the First Step Act, is there? Consecutive sentence for cases that are not 924C or just under. Or even for 924C. He's just not required to. Isn't that right? If I understand your question correctly, the court was required to provide consecutive sentences. Yes, before the First Step Act. And after the First Step Act as well. Well, assuming A means A. He wasn't required to stack. That's right, Your Honor. But he could have decided to come to the same sentence, could he not? Yes. He wasn't ordered to. He was not ordered to under the statute. If you're applying the First Step Act, meaning that A means then. I cut off Judge Boggs. We were thinking about what the practical effect of this would be. And your colleagues seem to indicate that any resentencing of any sort, whether for restitution or double accounting or whatever, would this decision also apply to other types of sentences? That is, if we say, quote, the First Step Act is retroactive, does it only apply to this kind of 924C stacking? Or are there all sorts of things in the First Step Act that would then come into play? It depends on what the others. Well, it becomes difficult. I think there's a case in another district where there was convictions of something other than 924C, and the case came back for resentencing. I believe it was the Third Circuit, and it was a case out of Puerto Rico, where some of the counts involved some kind of local violations of law. It came back, and the First Step was not applied, if I recall that case. Is it possible, notwithstanding the broad reading your friend gives the statute, to think that the sentence that's being referred to here is a 924C sentence? Because that's what the Act was meant to apply to. It was meant to apply to 924C in this subsection, also to drug offenses as well. Right, to drug offenses. So would it be a bad reading of the Act to say that when somebody is resentenced for the very crimes that the Act covers, then the Act applies to the resentencing, without worrying about whether or not the resentencing relates to unrelated crimes? That would be one way to interpret the statute, Your Honor. Again, that would say that the court would have to ignore or interpret the term a sentence. Aside from the word a, which I think is your best argument, what else should lead us to read this? In other words, what you're basically saying is a means any, and Congress didn't use any, but they used the word a, and I think a means any, and that ends the case for me. What are your other arguments other than the use of the word a? Again, Your Honor, I think that eventually this could become a windfall for someone in a different situation. I mean, these defendants were sentenced appropriately under the law at the time in 1997, and now, some 23 or 24 years later, if they got resentenced pursuant to 2255, they'd receive a significant windfall. I guess they would receive the same windfall if they committed these terrible crimes, and they were quite serious. It wouldn't be a windfall if Congress said that's what the new statute would be. I presume, at least in potential principle, going forward, if we decide, as your colleagues suggest, every 2255 consideration or there may be other means of vacating something, retroactivity of a new Supreme Court decision carries with it the reopening of all of these old cases under a new statute that wasn't passed in contemplation of that, or at least we wouldn't think it was. And that's why I asked you the question I asked before. It seems to me this statute was meant to deal with certain specific crimes. You agree? Moving forward. Well, whether it's moving forward or not, just there are only certain crimes this statute deals with. It doesn't say if you were, you know, you embezzled money from the U.S. government. There's a new sentencing scheme. It only deals with a new sentencing scheme for certain types of crimes. And with respect to the stacking argument. I mean, it has to be stacking in. So I guess my question is, do we have to buy his argument that it applies to everything without limitation, or is it just enough to conclude that the statute was meant to apply to people who hadn't received final sentences with respect to these kinds of crimes? You know, I don't think you have to accept the defendant's argument. You know, the practical effect of that is, of course, it opens up a panoply of more cases. And I understand your concern that it does. And I'm saying there's a way to do it in a more limited fashion. And I guess I go back to Judge Sung's question. If this court said, no, those convictions are no good, go back and resentence all over again, why aren't we, why isn't the sentence, not a sentence that we're looking at, for purposes of the act, the sentence that was finally imposed? Well, that would open up a whole panoply of future cases coming forward that have already been resolved. And in the interest of finality, which is a significant interest for the courts, it would reopen potentially an unlimited, well, I shouldn't say unlimited, but a significant number of other cases involving 924C that's been charged in the same indictment in the stacking. Well, the interest in finality is, I mean, the case has already been sent back because of some other independent error. That's why we're here, because there was an error that the court found worthy of vacating the convictions and sending the whole case back for resentencing. So the application of the First Step Act doesn't affect finality. That was, that's already, it's not final because of the error, earlier error. And the only question is, I think, that First Step Act's retroactivity provision has a broad application and then simply has a small carve-out, essentially, for cases where the conviction occurred and a sentence has already been imposed before the time of enactment. And really, the only question is whether a sentence that is no longer legally effective counts as a sentence that has been imposed at that second resentencing that is post-act. And my question, which I still think has been answered, is there any other context in which court can base a penalty on something that has no, no longer has a valid legal effect? I think the best way I can answer that question, Your Honor, is to try to put a defendant in the situation of post-hoc ante, or in other words, sentence them where they would have been sentenced, but for the vacated counts in this case, at the time of 1997. In other words, sentence them, put them in status quo. But that would leave us, that would vitiate B, which does think there should be some retroactive application of the act, does it not? Well, I think subsection B. You just disagree about where that line is drawn, but Congress rather clearly said, we don't care if we are being sentenced after the date of this act. We don't care what the law was when you committed the crime. We agree on that. Yes. You have to follow the new one. And when I go back to Voris, to some extent it seems to support the other side's argument, that what the Court of Appeals was saying in that case is, look, your sentence was final when it was given to you. We've done nothing to upset the sentence on appeal. So what we're not going to do is go back and revisit final sentences simply because this new act was passed. But if we were to implicitly read, I guess you're saying the act says A, my question is, why shouldn't we read A as a final sentence? So that would eliminate all the 2255s. I know it would disappoint your friend. But it would eliminate all the 2255s because a sentence had been final because it was imposed and not disturbed on appeal. But if a sentence was disturbed on appeal, then the act ought to apply. Why isn't that a reasonable reading of what Congress said? Well, again, Your Honor, it goes to the text of trying to interpret A sentence. And I think to be able to correct, at least in this case, the vacated counts, to be able to correct that error, I would suggest that it would be appropriate to, again, put the parties in the status quo ante where they would have been in 1997, but for the two other vacated counts, which resulted in some significant stacking up to two life terms, actually. And in this case, you know, the first bank robbery where a pipe bomb was used was the first in time, and the only stacked conviction was the subsequent armed bank robbery, you know, using a firearm. Would you like to address Mr. Volos' argument on the jury finding? Yes, I would say that with respect to jury instructions, they have to be read in a common sense manner, and they have to be read in toto. And I would suggest respectfully that in this case, not only were the jury instructions not objected to at the time of trial. Well, and there was no reason to object to them. There was no reason. Because we didn't have. Well, and at the time, you know, the jury was provided instructions and definitions. The jury instructions themselves define what a firearm is. What does the verdict form say? The verdict form? One moment. With respect to this count. The verdict form said. We find the defendants guilty. Guilty of the offense of use of a firearm, parenthesis, pipe bomb. Yeah, and see, it seems to me that while the focus has been on the instructions, we know what the jury found. It says what it found. It found that the defendants used a destructive device. And so it seems to me this is a case that actually complies with even the strictest reading of Apprendi. We know the jury made that finding. Whether or not the instructions led them or were confusing or did something else, we're not here about the instructions. We're here about whether the jury made a finding. And it did, didn't it? It did, Your Honor. And I think you compare that to the other verdict form for the final count, and that is of the use of a firearm during a crime of violence. A firearm. There was no parenthesis pipe bomb. So, in other words, you know, for one crime, the firearm was defined in parenthesis as a pipe bomb, and the other subsequent bank robbery where it was just a firearm used, it said just firearm. The Perez case counsel referenced was a matter in which the indictment contained several firearms in the disjunctive, and one of those firearms carried an enhanced penalty under the statute. Just like, you know, a sawed-off shotgun carries a bigger, greater penalty than an ordinary firearm. And so in that case, when there's been counts charged in the disjunctive, I think maybe that would be appropriate for a special verdict form to find out which firearm the jury convicted on. But in this case, that wasn't the case. Because one of the counts was only directed to the destructive device, and the jury made a specific finding in its verdict. That's correct. If there's no further questions, thank you. Thank you. Hello again, Your Honors. I have a couple more comments regarding the First Step Act. Mr. Vovos has indicated to me that he wanted to give the rest of his rebuttal time to me as well. The thing I wanted to add that was specifically in the brief, the amicus brief from the Senators, and this brief was cited to in the Henry case, is that even though it deals with 401, it still has its application to 403. Congress intended for Section 401 to apply to pre-act offenders who are not subject to a sentence for their offenses, including those individuals whose original sentences are vacated as unlawful for other reasons. In selecting texts to meet this objective, Congress relied on the settled principle that when a sentence is vacated, it becomes void in its entirety, their borrowing office. So my question to you is, I think we can rely on that principle if we want to, but how much weight do we give to a post hoc evaluation of what a statute says by five members of Congress? In other words, Justice Scalia always argued that we shouldn't even pay attention to what they said before they enacted the act. I'm not sure I agree with that, but why should we pay any attention to what they said after they enacted it? Because it shows what their intent was. That's why. It shows what these five people intended, but does it really tell us what the members of Congress intended when they adopted this act? I believe it does because this is the individuals who wrote the bill. That's why. With respect, it was written probably by staff. True, true. But these were the individuals who sponsored it, and it's their, for lack of a better word, their baby that they wanted passed. And thankfully it was passed in a bipartisan manner. But essentially they're arguing the same thing. These individuals, on their resentencing, were in the same position as if someone has never been sentenced before. And that, just to make sure what your position is, that would apply really to any type of resentencing, whether you call it an open record or limited remand or whatever, because as Judge Sung sort of indicated, the old sentence, whatever you call the new sentence, the old sentence is invalid. Correct. If they left out something even they didn't mean to, the new sentence is what counts, right? Correct. And that goes back to the dissent in Jackson, where that's why I think Jackson was wrongly decided in that case, because they weren't looking at a valid sentence with the original sentence. Well, let me push back a little bit on the breadth of your argument. Why shouldn't, why isn't an appropriate reading of B, when it says a sentence, to mean a final sentence, in which the sentence has become final before the final date of it? If they wanted to write it in there as a final sentence, they would have done it. Well, look, the problem is if they wanted to write it clearly, they should have, and they didn't. They used the word A, which allows your friend to say, I know what A means. A means any sentence. So I never find it very persuasive to say, well, they could have written the statute better. We're here because they didn't write the statute as well as they might, and the circuits have split over how to interpret it. So I'm asking, why isn't the most reasonable reading of it to think of, we don't want to upset final sentences. And final sentences are sentences that have not been disturbed on direct appeal. That would benefit your clients in this case. But I'm resisting the notion that if somebody brings a 2255 20 years down the road and gets relief, that we're then going to have to upset sentences that were final but on direct appeal. I'm just not sure why you need to make that argument. Other than that you have clients that may fall in that category. Well, I mean, our clients fall in that category because it was 2255. They were successful on completely separate reasons why they got into court. And so it's not the First Step Act that got them into court. But because they are sentenced in 2020, they have to have the application of the First Step Act because that is the new law. That is the one that applies to them. Well, I understand that. But your clients, remind me of the procedural way your clients got to this case. Okay. So originally they were convicted and sentenced in 1997. Right. 2016 they moved the court based on Johnson. 2019 their motions were granted, which was a few months after the passage of the First Step Act in 2018. Right. But they were entitled prior to the adoption of the First Step Act to be resentenced because of Johnson, correct? They could have been. Well, they brought a habeas petition. Yes, they did in 2016. Right. And so they were required to be resentenced independently of the First Step Act. Yes. But my understanding is that in one of the orders, the judge and the district court had actually waited for a particular decision in the night. Yeah. And the fact that he waited to do it until later didn't matter. My point is that their entitlement to resentencing had ripened, if you will, prior to the adoption of the First Step Act. Yes, but they were not resentenced before. In fact, had they moved more promptly or had the judge moved more promptly, then you wouldn't have this argument, even though they would have been just as entitled to relief because of Johnson. Yeah. But here's the thing. They weren't before the First Step Act. They're afterwards. Yeah, but that has to be your entire argument. I'm saying that that was in some sense either advantageous or unknowingly strategic. That is, the fact that the delay pushed it past the First Step Act, which had nothing to do with these folks, turned out to give you an argument that you wouldn't have had if they had moved more promptly after Johnson and the judge had moved more promptly. Right? We cannot control the district court and where the judge wanted to decide. But, you know, as Judge Box points out, if the district court had said, my God, you're right, I'm going to resentence you right away, you agree you would not be entitled to this. That would be a very different scenario than what we have here. Of course. Every time I ask hypothetical, it's a different scenario than what we have here. You'd agree under those circumstances you would not be entitled to the benefit of the First Step Act. If they were sentenced before the First Step Act, after their 2255, they'd be in the same position as the Kelly case, but they're not. Right. So even though their original sentences have been vacated, the fact that the new sentence was reimposed before the First Step Act would disqualify them for relief. If we're following the Kelly reasoning, then in that scenario, yes, but that's not the scenario here. I understand. That's all I have, Your Honor, unless you have further questions.  We thank all counsel in this case for their excellent briefing and arguments, and we will proceed. This case will be submitted.
judges: Boggs, HURWITZ, UNKNOWN